**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:                                           :        Chapter 7
                                                 :
Eugenio M. Barrios,                              :        Case No. 06-11852 (brl)

       Debtors,                                :
---------------------------------------------------------------x


Carmen M. Gomez-Cuevas, as Administratrix, of the        Adv. Pro. No. 06-01909
Estate of Angelica Gomez,

                                Plaintiff,

       -against-

Eugenio M. Barrios

                                Defendant.
---------------------------------------------------------------x
APPEARANCES:

Michael Schlanger, Esq.
Attorney for Plaintiff
1025 Westchester Ave., Suite 108
White Plains, NY 10604
(914) 946-1981

Lance Roger Spodek, P.C.
Attorney for Debtor-Defendant
330 West 58 Street, Suit 306
New York, NY 10019
(212) 586-8606

Before: Burton R. Lifland, United States Bankruptcy Judge

1

# MEMORANDUM DECISION DISMISSING NON-DISCHARGEABILITY COMPLAINT

This adversary proceeding is an interfamily non-dischargeability action brought by the administratrix (the "Plaintiff") of the estate of Angelica Gomez (the "Decedent") against her son, a chapter 7 debtor, Eugenio Barrios (the "Debtor"), the grandson of Decedent, under section 523 of title 11, United States Code ("Bankruptcy Code"). The Plaintiff contends that the debt is non-dischargeable based primarily on section 523(a)(2)(A), and to a lesser extent, section 523(a)(4) and section 523(a)(6) of the Bankruptcy Code.

The crux of this proceeding is a mortgage loan obtained by the Decedent,[1] to raise proceeds for the Debtor to invest in a nightclub, "*Boppers After Dark*." The mortgage loan (secured by the Decedent's home) was acquired in the amount of approximately $168,750.00 on February 15, 1996. Decedent received a check for that amount (minus the closing expenses) and promptly signed it over to the Debtor. These facts are uncontested.

What is in dispute, however, is how much money, if any, the Debtor returned directly to the Decedent and the agreed upon repayment terms of the mortgage loan. Plaintiff claims the Debtor kept the entire amount of the check for his investment and personal needs. Additionally, Plaintiff contends that the Debtor made an agreement with the Decedent to fully repay the entire mortgage loan, plus interest, directly to the lending bank. She further alleges that the Debtor misrepresented to the Decedent his true intentions

---

[1] The mortgage loan was technically co-issued to both the Decedent and one of Decedent's daughters, Angelica Morales. However, it is uncontested that this arrangement was purely superficial to make it easier to obtain an approval for the mortgage loan.

2

regarding repayment of the mortgage loan. The Debtor, however, claims he placed only $100,000 of the mortgage loan proceeds into his investment, and gave the rest of the proceeds back to the Decedent, in the form of cash, in the presence of at least one witness. The Debtor contends that he made an agreement with the Decedent that he would pay back $100,000, plus 2% interest, directly to the bank, for a grand total of $115,000. He further contends that the Decedent did not initially want him to pay any interest, but later agreed to the terms, and was fully aware the money would be used for the nightclub.[2]

The Debtor did in fact make the full monthly payments due under the mortgage loan from the commencement of the mortgage loan in 1996 through May or June 2003. Debtor asserts that his monthly payments, made directly to the lender continuously until about one month after Decedent's death on April 26, 2003, satisfied his responsibility under the terms of the agreement.

After the Debtor stopped making the mortgage loan payments, a foreclosure action was commenced against the Decedent's estate in Supreme Court, Bronx County. Plaintiff, on behalf of Decedent's estate, paid the mortgage lender $202,922.39 to settle the foreclosure action. Plaintiff then commenced an action against the Debtor in Surrogates Court to recover the money the Decedent's estate had to pay the lender. The Debtor's bankruptcy filing in this Court stayed the Surrogates Court proceeding.

---

[2] Plaintiff conceded at trial that the Decedent "had all her faculties" at the time the mortgage loan was made.

3

Plaintiff argues that this debt is non-dischargeable under (i) section 523(a)(2)(A) because it was obtained by false pretenses or fraud; (ii) section 523(a)(4) because the Debtor was acting in a fiduciary capacity and made a misrepresentation; and (iii) section 523(a)(6) of the Bankruptcy Code because the Debtor caused a willful injury.

*Discussion*

Exceptions to discharge are construed liberally in favor of the debtor and strictly construed against the objecting creditor. *Peters v. Hennenhoeffer (In re Peters),* 133 B.R. 291 (S.D.N.Y. 1991); *see Bethpage Fed. Credit Union v. Furio (In re Furio)*, 77 F.3d 622, 624 (2d Cir. 1996) (exceptions to dischargeability are narrowly construed against the creditor's objections). In order for a debt to be classified as non-dischargeable under section 523, the creditor must meet the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-90 (1991) (holding that a preponderance of the evidence standard, rather than a clear and convincing standard, applies to all exceptions to discharge). The Plaintiff failed to meet her burden on all bases asserted for the reasons discussed below.

*False Pretenses and Fraud Claim*

Section 523(a)(2)(A) of the Bankruptcy Code provides that an individual debtor will not be discharged from any debt relating to money or property to the extent obtained by (1) false pretenses, (2) a false representation, or (3) actual fraud. 11 U.S.C. § 523(a)(2)(A). *See Citik Ka Wah Bank Ltd. v Wong (In re Wong)*, 291 B.R. 266, 273 (Bankr. S.D.N.Y. 2003). Here it is alleged that the Debtor concealed, failed to disclose, and misrepresented

4

to the Decedent that he would pay back the full amount of the mortgage loan and under what terms he would be pay it back.

Both the Debtor and his aunt, Angelica Morales[3] testified that the Decedent agreed that the Debtor was going to pay back $100,000, plus 2% interest. The Debtor further testified that he gave back the remainder of the proceeds of the mortgage loan to the Decedent, after subtracting the $100,000 mortgage loan, and that the Decedent actually wrote out a receipt for the amount she received. Ms. Morales testified she was also present when that occurred and confirmed that the Decedent wrote and kept a receipt of the transaction[4].

The only evidence presented by the Plaintiff to support her contention that at the time the mortgage loan proceeds were given to the Debtor that the Decedent was led to believe that the Debtor planned to fully repay the mortgage loan is the will written by the Decedent in 2001, five years after the transaction took place.[5] The record is barren as to events that took place after the Decedent discussed the terms of the mortgage loan repayment, and the amount of time that passed between the mortgage loan (1996) and will being written (2001), the terms of the will are not sufficient to rebut the evidence supporting the Debtor's contentions. There is no telling what intra-family squabbles

---

[3] The Debtor provided the deposition of Angelica Morales from a proceeding in the Surrogates Court of Bronx County. Ms. Morales lives in Florida and was not subject to a subpoena in this proceeding.
[4] The Decedent's house was destroyed by fire, and no receipt was apparently recovered.
[5] In short, the will, dated April 23, 2001, purports to say that "… my grandson Eugenio Barrios [will] continue[] to repay the mortgage debt incurred on his behalf until it is repaid in full."

5

might have occurred,[6] what memories have faded, or whether influence was placed upon the Decedent when she was writing her will.

The key issue is whether the representations made to the Decedent regarding the debt were given fraudulently or with misrepresentation. The failure to perform a promise (*i.e.* not fully paying back a loan) is not sufficient to make a debt non-dischargeable, even if there is no reason or excuse for the subsequent breach. *See Kotan v. Austin (In re Austin)*, 132 B.R. 1, 3 (Bankr. E.D.N.Y. 1991). A fraudulent promise under section 523(a)(2)(A) requires proof that at the time the debtor made the promise, he or she had no intent to perform the promise. *Seepes v. Schwartz* (*In re Schwartz*), 45 B.R. 354, 357 (Bankr. S.D.N.Y. 1985). If the Debtor had no intention of performing the obligations under the contract when he entered into the agreement, the debt is non-dischargeable. The Plaintiff failed to show any evidence to support a finding of fraud or misrepresentation.

Courts examine a debtor's intent by analyzing whether he or she has taken any steps to perform the contract. *See Schwalbe v. Gans (In re Gans),* 75 B.R. 474, 487 (Bankr. S.D.N.Y. 1987); *In re Schwartz,* 45 B.R. at 357. Here, it is undisputed that the Debtor paid the mortgage loan from early 1996 through May 2003. This demonstrates the Debtor's initial intent to make good on his alleged promise to repay the mortgage loan. A Debtor's statement of his future intentions is not automatically a misrepresentation if intervening events cause his actions to change from the previously expressed intentions.

---

[6] In fact, this transaction had caused tension in the family even before it occurred. The Plaintiff testified that she did not approve of the mortgage loan her mother gave her son and for that reason, her mother did not discuss the transaction with her.

6

*Kuper v. Spar (In re Spar)*, 176 B.R. 321 (Bankr. S.D.N.Y. 1994). It is insufficient under section 523(a)(2)(A) "simply to show that [a] debtor left unfulfilled a prior oral representation or promise. Were this showing sufficient, virtually every oral obligation would give rise to a non-dischargeable debt under § 523(a)(2)(A)." Jarina v. Balzano (*In re Balzano*), 127 B.R. 524, 531 (Bankr. E.D.N.Y. 1991). The Plaintiff presented no evidence rebutting the Debtor's contention that he had an agreement with the Decedent and did not conceal from the Decedent at the time the mortgage loan was obtained his intent to stop paying the mortgage loan after $115,000 was repaid.

The other part of section 523(a)(2)(A) of the Bankruptcy Code concerns actual fraud as opposed to misrepresentation. Plaintiff conceded on the stand that the Debtor did not engage in intentional deceit to obtain the mortgage loan. The underlying foundation of fraud is in fact intentional deceit. *See In re Schwartz & Meyers*, 130 B.R. 416, 422 (Bankr. S.D.N.Y. 1991) ("To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong").

*Fiduciary Claim*[7]

A discharge does not discharge a debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. *See* 11 U.S.C. § 523(a)(4). For these purposes, the term "defalcation" includes any failure, innocent or otherwise, by a fiduciary to account for, or pay over, trust funds entrusted to him or her. *See Peerless Ins. Co. v. Casey (In re Casey)*, 181 B.R. 763, 766 (S.D.N.Y. 1995); *Andy Warhol Found.*

---

[7] Plaintiff's post trial brief indicated that counsel withdrew its claim that the Debtor obtained the mortgage loan while acting in a "fiduciary capacity" under § 523(a)(4) of the Bankruptcy Code. It is not clear to the Court that this count was withdrawn and thus, it shall be addressed.

7

*for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999). The Plaintiff alleges that the Debtor was acting in a fiduciary capacity towards the Decedent (his grandmother) and thus the debt he incurred is non-dischargeable pursuant to section 523(a)(4) of the Bankruptcy Code.

The Plaintiff's reliance on this section is flawed for several reasons. First, fiduciary capacity is limited to cases where the trust relationship predates and exists apart from the act from which the underlying indebtedness arose. *In re Casey*, 181 B.R. at 766. While it is alleged that the Debtor had access to the Decedent's bank accounts and was "in charge" of paying the Decedent's bills "off and on" since 1996, it is unclear if this alleged fiduciary relationship existed prior to the mortgage loan agreement, a necessary requirement of section 523(a)(4). Furthermore, it is not alleged that any misappropriation of those particular funds occurred.

The traditional view of a fiduciary is inapplicable in bankruptcy law. Instead, something beyond the usual relationship that involves confidence, trust, and good faith is required. The Supreme Court prefers a narrow construction of the term "fiduciary capacity" and thus defines the term as arising from an express or technical trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934); *see Zohlman v. Zoldan,* 226 B.R. 767, 772-73 (S.D.N.Y. 1998). There are no allegations that the mortgage loan given to the Debtor arose from any sort of trust.

8

*Willful Injury Claim*[8]

Section 523(a)(6) provides that a debt for willful and malicious injury by the debtor to another entity or to the property of another entity is non-dischargeable.  11 U.S.C. § 523(a)(6).  The Supreme Court held in *Geiger* that "willful in (a)(6) modifies injury and not merely a deliberate or intentional act that leads to injury is required."  498 U.S. 279, 286-90 (1991).  Here, no evidence has even been offered to suggest the Debtor had any intention to willfully and maliciously injure the Decedent, who was deceased at the time the Debtor stopped making mortgage loan payments.  Accordingly, this claim is unsubstantiated.

*Conclusion*

For the reasons stated above, the Plaintiff has failed to sustain her burden of proving the elements essential to establish the non-dischargeability of her claim under 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6).  Accordingly, the complaint is dismissed.

IT IS SO ORDERED.

Dated:  August 20, 2007                                           Hon. Burton R. Lifland
           New York, New York                                    United States Bankruptcy Judge

---

[8] Plaintiff presented no evidence at trial with regard to this count.